## ROSENTHAL v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit. March 7, 1927.)

No. 3496.

1. Post office ⟨⟨⟩⟩50—Whether defendant intended to publish any directory held, on prosecution for use of mails to defraud, question for jury.

Whether, in view of difference between representations and the facts, defendant before his arrest intended to publish directories, or whether what he afterwards did was the result of an afterthought to give his scheme the appearance of honesty, held, on prosecution for use of mails

to further scheme to defraud, to be questions for jury and not for the court.

2. Post office ⟨⟨⟩⟩50—Whether defendant in prosecution for use of mails intended to publish a directory containing information as represented held on evidence question for jury.

Whether defendant intended to publish directories containing information such as he represented held on the evidence, on prosecution for use of mails to further scheme to defraud, question for the jury.

3. Criminal law ⟨⟨⟩⟩829(1)—Refusal to give charge as requested is not error, it being substantially charged.

It is not error to refuse to give a charge as requested, where it is substantially charged.

4. Post office ⟨⟨⟩⟩50—Submitting fact of defendant operating under assumed names to be considered on question of scheme to defraud held proper.

It was not error, on prosecution for use of mails to execute scheme to defraud, to submit that defendant operated under other names than his own as one of the facts to be considered in determining whether he devised a scheme to defraud or in good faith intended to publish directories in accordance with his representations.

5. Criminal law ⟨⟨⟩⟩1038(1)—Court of Appeals will not consider charge to which there was no objection, in absence of manifest prejudice of plain error (Judicial Code, § 269, as amended by Act Feb. 26, 1919 [Comp. St. § 1246]; Court of Appeals Rule 11).

While Court of Appeals, under Judicial Code, § 269, as amended by Act Feb. 26, 1919 (Comp. St. § 1246), and Court of Appeals Rule 11, has power in the absence of exception to consider questions of error in charge to which no objection was made below, it will not do so; there not being manifest prejudice or plain error.

In Error to the District Court of the United States for the Western District of Pennsylvania; Frederic P. Schoonmaker, Judge.

Allen L. Rosenthal, alias A. D. Roberts, alias the Roberts Publishing Company, was convicted of illegal use of the mails, and he brings error. Affirmed.

Louis E. Levinson, of Chicago, Ill., and Frank R. S. Kaplan, of Pittsburgh, Pa., for plaintiff in error.

John D. Meyer, U. S. Atty., and James I. Marsh, Asst. U. S. Atty., both of Pittsburgh, Pa.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. Allen L. Rosenthal was indicted, tried, and convicted for having used the mails to execute a scheme or artifice to defraud which he had devised.

The scheme consisted in advertising through newspapers, circulars, letters, etc.,

that he was the publisher of a Roberts' Masonic Directory which was then being compiled and would very shortly be ready for distribution. The following is a sample of the circular sent out by him:

"Roberts' Pennsylvania Masonic Directory.

"General Offices: Suite C, Arrott Building, Pittsburgh, Pa.

"Philadelphia Offices: Second Floor, 1015 Chestnut St. Phone Walnut 3600, Court 1290.

"Last Notice.—Advertising forms will close positively December 18th.

"Requests.—Due to the great number of requests we have had, for space in our directory, we have postposed the closing date until December 18th. Advertising received after that date will be returned to the senders.

"A Directory of Masonic Lodges in Pennsylvania. Locations, names of presiding officers, date and time of meetings, and other valuable information for Masons.

"Jos. Staudacher.

"Office Butler 984-J. People's Phone 1654-K.

"Manufacturer of the Staudacher Refrigerator Wood and Opal Glass-Lined Refrigerators for All Purposes.

"Factory: Mill and S. Wash. Sts., Butler, Pa.

"Detach here and mail immediately with below.

"Gentlemen: Roberts' Pennsylvania Masonic Directory for 1925 now being compiled, will be off the press and ready for distribution very shortly.

"Advertising forms will close within six (6) days.

"It will contain information relative to locations of Blue Lodges, Chapters, Consistory, Commanderies, Shrine, Grotto, Eastern Stars and other branches of the Masonic Fraternity together with names, addresses and telephone numbers of the presiding officers, dates and time of meetings and other information that will be most valuable to the fraternity at large.

"Lodges in the state of Pennsylvania will receive a sufficient quantity of these directories for their membership, and under this method of distribution, which will be free to the members, the circulation will be large and your advertisement therein will be productive of good results as it will be seen and read by members throughout the entire year.

"Regardless of what your business is or what you sell, job, manufacture or distribute, can you afford not to be represented in this directory for the small cost?

"Write your advertisement in the above space or O. K. the attached copy, then detach and mail in to us together with the coupon below properly filled in. The cost is only five ($5.00) dollars. Think of it! A whole year's advertising for only $5.00!

"Your prompt attention will enable you to get preferred position.

"Thanking you in advance, and hoping to be favored with your order by return mail, we are,

"Very truly yours,

"Roberts' Pennsylvania Masonic Directory.

"Detach here and mail immediately with above copy for preferred position in directory.

"Date ———, 192—.
" ————————,
(Name of Bank.)
" ————————.
(Location.)

"Pay to the order of Roberts Publishing Company $5.00 five and no/100 dollars.
"Firm Name, ————.
"Address, ————,
"By ————.

"This must be signed only by persons authorized to sign checks."

In order to secure advertisers in these directories, the defendant prepared proposed advertisements and sent them through the United States mails. If the person who received one of these samples approved the proposed advertisement of his business, he returned it with $5 to pay for it. The defendant had two offices in the city of Boston, Mass., in which he employed about 30 girls who were engaged in preparing and mailing letters and circulars, containing suggested advertisements to prospective patrons. In doing this they cut out advertisements which they found in telephone books, directories, and other books from the various localities in which the directories were to be published. He also had an office in Rochester, N. Y., where 10 girls were engaged in doing the same kind of work. Some circulars were sent through the mails in stamped envelopes bearing the return address, some by express, and some by parcel post. About 70,000 circulars were prepared in the Boston office and thus sent to various localities. They were similar in all respects except name. For instance, those to be published in Pennsylvania were called "Roberts' Pennsylvania Masonic Directory," "Roberts' Pittsburgh Ma-

sonic Directory," etc. In order to secure advertisements, some circulars contained such statements as: "Last Notice.—Advertising forms will close positively December 18;" "Requests.—Due to the great number of requests we have had for space in our directories we have postponed the closing date until December 18th. Advertisements received after that time will be returned to the senders." Directories were to be published for Boston, New York City, Pittsburgh, the state of Pennsylvania, and elsewhere.

[1] Admittedly the defendant did devise a scheme to publish Masonic directories and to secure advertisements to be published therein for which he received considerable money. Did he in good faith intend to publish such directories as his literature described, or did he not intend to do so and thus defraud those who paid for advertisements?

The scheme was devised prior to October 7, 1924, for on that date he wrote letters to various grand Masonic Lodges relative to publishing directories for Blue Lodges, etc., over which they had jurisdiction.

Some time thereafter, he sent out circulars saying this was the "last notice" and that advertising forms would "close positively December 18th"; that the directories were "now being compiled, will be off the press and ready for distribution very shortly." But the fact is that on December 18, 1924, no compilation whatever of the data for the directories had been made, nor had he entered into negotiations with any one for printing. The logical inference from his statements, and the inference which he doubtless intended prospective advertisers to draw, is that the work of actually compiling the books was then in progress and they very shortly would be off the press. It is true that some directories for certain localities were published in February or March of the following year. Whether or not, in view of the difference between the representations and the actual facts, the defendant before his arrest in good faith intended to publish directories of any kind, and whether or not what he did afterward was done in accordance with his original plan or was done as the result of an afterthought to give his scheme the appearance of truth and honesty for the purpose of defense, were questions for the jury and not the court.

[2] But assuming that he did intend in the first place to publish directories, and that what he did after his arrest was in pursuance of his original plan, did he intend to publish directories giving the names of the Blue Lodges, etc., "together with names, addresses and telephone numbers of the presiding officers, dates and time of meetings" and other "valuable" information as he represented or did he intend to publish only a fake directory and thus defraud advertisers? In the names of the first 25 lodges in the "Pennsylvania Masonic Directory" published some time the following year, 16 contain nothing but the name and address of the lodge followed by the words, "No information given." In the first 25 in the Philadelphia Directory, 20 have nothing but the name and address of the lodge, followed by the same words, "No information given." About this same proportion runs throughout all the directories. The names, addresses, telephone numbers of presiding officers, and time of meeting of the lodges could have been easily secured. When a letter did not bring the desired information, did an honest intention to publish a directory in accordance with the representations made in the letters and circulars require him to obtain the information in some other way? This was a question, under proper instructions, for the jury and not the judge. There was some substantial evidence which supports the charge that he intended to defraud. The evidence does not exclude every reasonable hypothesis but that of guilt, and therefore the case was properly submitted to the jury. Isbell v. United States (C. C. A.) 227 F. 788; Glass v. United States (C. C. A.) 231 F. 65.

[3] Rosenthal operated his scheme under the names of A. D. Roberts and the Roberts Publishing Company. He says that he did it "for business reasons," and that the judge erred in refusing to charge that: "The court instructs the jury that the use of a name other than his own by the defendant in connection with an alleged scheme to defraud is not of itself evidence of his intention to defraud as alleged in the indictment. Unless the jury believes beyond all reasonable doubt that at the time alleged in the indictment the defendant intended not to publish the directories or to insert the advertisements in the said directories, but intended to convert the money received from the persons alleged in the indictment to his own use, then you are instructed that you are not to consider the use of a name other than the defendant's own."

This request really embraces two. However, it was substantially charged and in almost the identical words of the request itself. It was not error to refuse to charge it as requested.

[4] The defendant says that the trial judge further erred in charging: "Now, the fact

that the defendant's name is Allen L. Rosenthal, and that he used the name of A. D. Roberts, is a fact that may be considered by you in determining whether or not a scheme to defraud existed." It was neither charged nor proved, he contends, that "Roberts was any part of the scheme to defraud," and therefore that part of the charge relating to the assumed names was prejudicial.

He was indicted as Allen L. Rosenthal, alias A. D. Roberts, alias Roberts Publishing Company, and the proofs showed that he did operate under these names. The reasons for which he did it raised a jury question, and it was not error for the trial judge to submit it as one of the facts to be considered by the jury in determining whether or not the defendant devised a scheme to defraud or in good faith intended to publish Masonic directories in accordance with his representations.

[5] Furthermore, no objection was made to this part of the charge, and it would be unfair to reverse a judgment on an error to which the attention of the trial judge was not called and which he was not given an opportunity to correct. Blisse v. United States (C. C. A.) 263 F. 961; O'Connell et al. v. United States, 253 U. S. 142, 40 S. Ct. 444, 64 L. Ed. 1019; Exporters v. Butterworth-Judson Co., 258 U. S. 365, 42 S. Ct. 331, 66 L. Ed. 663. While the court has power to consider the question in the absence of an exception, Act of February 26, 1919 (40 Stat. 1181 [Comp. St. § 1246]); Rule No. 11 of this court; Thompson v. United States (C. C. A.) 283 F. 895, it will not do so unless there was manifest prejudice or plain error. There are no facts in this case that would justify us in exercising this power.

We do not find that the trial judge committed error, and therefore the judgment is affirmed.