## MABEE v. UNITED STATES, and five other cases.

### Nos. 4782, 4783, 4801–4804.

Circuit Court of Appeals, Third Circuit.
July 8, 1932.

George R. Sommer, of Newark, N. J., for appellants.

Phillip Forman, U. S. Atty., and Walter B. Petry and John W. Griggs, Asst. U. S. Attys., all of Trenton, N. J.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

THOMPSON, Circuit Judge.

These cases were heard by a District Judge specially assigned to the District of New Jersey. The right to trial by jury was waived. In each case the defendant was convicted and sentenced for the unlawful possession and transportation of intoxicating liquor. Although the facts vary, the grounds for the respective appeals are essentially identical. The defendants claim that the evidence produced by the government had been obtained by an unlawful search and seizure and in violation of the Fourth and Fifth Amendments of the Constitution of the United States.

In the Mabee case, New Jersey state troopers, in obedience to the instructions of their superior officers to check all traffic, stopped the truck driven by the defendant at about 3 o'clock in the morning. As they approached the truck, they smelled the odor of beer. They questioned the defendant, and, after a somewhat extended conversation, he admitted that he was transporting beer. When the troopers opened the rear of the truck, they found 120 half-barrels of beer. He was thereupon arrested. The truck, its contents, and the defendant were turned over to the federal prohibition authorities. The prosecution was instituted under the National Prohibition Act and not the State Prohibition Act. No complaint was ever made as to a violation of traffic laws by the defendant.

In the Toblinsky case, a federal prohibition agent received an anonymous telephone call. He was informed that three trucks loaded with beer were coming on the Burlington Pike, leading from Trenton to Camden. The information was that two of the trucks would be camouflaged on the rear with Victrola boxes and the third with baskets of string beans.

It is unusual for produce to be transported south on the Burlington Pike in the early morning. They saw a truck, driven by the defendant, loaded with garden produce, and accompanied by another truck which contained a load of Victrola boxes. They stopped both trucks. One of the agents detected an odor of beer coming from the truck containing the produce. Upon search, it was revealed that the truck driven by the defendant contained 75 half-barrels of unlabeled beer.

In the Moore case, federal prohibition agents received information that a truck carrying beer, and answering the description of the truck driven by the defendant, would come along the highway from Atlantic City. The agents followed the truck, stopped it, and discovered that it contained 107 half-barrels of beer. The defendant stated that he had been hired to drive the truck to Atlantic City.

In the Grunwald case, a federal prohibition agent was told by his superior that a five-ton Brockway truck bearing the name "Primo Silk Manufacturing Company, Paterson, New Jersey," was coming from Elizabeth on the New York road at 2 o'clock the following morning. The agents waited on this road until 4 o'clock, when they stopped a truck driven by the defendant which answered the description. Trucks carrying silk usually have an extra guard, and the doors in the back of the truck are locked, whereas the truck in question had no extra guard and had no lock on the back door. The agents stopped the truck and asked the defendant what he had on it. He replied that it contained 65 half-barrels of beer.

In the Clarkson (3351-b) case, federal prohibition agents were informed that trucks were coming over the New York road, route 4, delivering beer. About 2 o'clock in the morning a green Autocar truck driven by the defendant was stopped by them. A man who was riding with the defendant jumped off the seat and ran into the woods. The defendant stated that he did not know what was in the truck and that he had been hired to deliver it to people who would meet him in Atlantic City. When the truck was opened, it was found to contain beer. The defendant did not claim any ownership in the truck or its contents.

In the Clarkson (3559-b) case, New Jersey state troopers were informed that a large green Brockway truck having the words "Ocean City" painted on it was on its way down the Trenton Highway. The truck driven by the defendant answered this description. The troopers stopped it, questioned the defendant, and were told by him that it contained a load of beer. The defendant disclaimed ownership of both the truck and its contents. The state troopers turned the truck, its contents, and the defendant over to the federal prohibition authorities.

In each of the cases under consideration the beer seized was of unlawful alcoholic content and fit for beverage purposes.

The contention is made in each case that the search and seizure were unlawful because made without probable cause. In Carroll v. United States, 267 U. S. 132, 155, 45 S. Ct. 280, 286, 69 L. Ed. 543, 39 A. L. R. 790, it is said: "The measure of legality of such a seizure is, therefore, that the seizing officer shall have reasonable or probable cause for believing that the automobile which he stops and seizes has contraband liquor therein which is being illegally transported."

In Stacey v. Emery, 97 U. S. 642, 645, 24 L. Ed. 1035, probable cause is defined as follows: "If the facts and circumstances before the officer are such as to warrant a man of prudence and caution in believing that the offence has been committed, it is sufficient."

Chief Justice Marshall in the case of Locke v. United States, 7 Cranch, 339, 348, 3 L. Ed. 364, thus defined what is meant by probable cause: "It is contended, that probable cause means prima facie evidence, or, in other words, such evidence as, in the absence of exculpatory proof, would justify condemnation. This argument has been very satisfactorily answered on the part of the United States by the observation, that this would render the provision totally inoperative. It may be added, that the term 'probable cause,' according to its usual acceptation, means less than evidence which would justify condemnation; and, in all cases of seizure, has a fixed and well known meaning. It imports a seizure made under circumstances which warrant suspicion. In this, its legal sense, the Court must understand the term to have been used by Congress."

We follow that definition of probable cause as a guide. In these cases each seizure was made under circumstances which amply warranted suspicion that the vehicle seized was being used in violation of the law.

In the cases in which the seizure was made by the state troopers, there is no evidence that this was done with the co-operation and knowledge of the federal authorities. No federal officers were present nor did they have

knowledge either of the seizure or the arrest until the contraband and the prisoner were turned over to them. There is no evidence of any agreement or understanding between the state officers and the federal prohibition agents that the seizure should be made by the former on behalf of the latter. Since the transportation and possession of intoxicating liquor are violations of the New Jersey State Enforcement Act (see Comp. St. Supp. § 100—274) as well as of the National Prohibition Act (see 27 USCA §§ 12, 39) the seizure might have been made originally in order to enforce the state laws. Gambino v. United States, 275 U. S. 310, 48 S. Ct. 137, 72 L. Ed. 293, 52 A. L. R. 1381, may therefore be distinguished, since in that case the record showed that there was co-operation between the state officers and the federal prohibition agents. We have previously held in Miller v. United States, 50 F.(2d) 505, that the government may accept the benefits of an alleged unlawful search and seizure and use the property seized in evidence provided there was no co-operation between the two sets of officials and provided the seizure was not made solely in aid of a federal prosecution.

It may be added that in those cases in which the defendants have disclaimed ownership of the contraband vehicles and their contents they are not in the position to raise a question of constitutionality of the seizure. In Graham v. United States (C. C. A.) 15 F. (2d) 740, and the cases there cited, it was held that the guaranty of the Fourth Amendment against unreasonable search and seizure is a personal right or privilege available only to the owner or claimant of the property which has been subjected to the alleged unreasonable search or seizure.

The judgments of the court below are therefore affirmed.