## WHITCOMBE et al. v. UNITED STATES.
### Nos. 6169, 6267–6269.

Circuit Court of Appeals, Third Circuit.
May 7, 1937.

Rehearing Denied June 28, 1937.

Frederic M. P. Pearse, of Newark; N. J. (Max Mehler, of Newark, N. J., on the brief), for appellant Whitcombe.

George R. Sommer, of Newark, N. J., for appellants Turnia, Giordano, and Marlo.

John J. Quinn, U. S. Atty., of Red Bank, N. J., and William F. Smith, Sp. Asst. U. S. Atty., of Trenton, N. J., for appellee.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

DAVIS, Circuit Judge.

This is an appeal from a judgment entered upon the verdict of a jury finding the defendants guilty in an indictment of six counts charging them with conspiracy, with having a still in their possession without registering it, with engaging in the business of distillers without notice to the proper government officer, with working in a distillery for the production of spirituous liquor upon which no sign bearing the words "Registered Distillery" was placed and kept, with engaging in the business of distillers with intent to defraud the United States of the tax on the spirits they distilled, and with recovering and attempting to recover for beverage purposes by redistillation alcohol from denatured alcohol after the same had been withdrawn from bond without the payment of internal revenue tax for use in the arts and industries.

The defendants were found guilty, Whitcombe and Turnia on all counts, Giordano on the second, third, fifth, and sixth counts, and Marlo on all counts, except the first. The government confessed error as to the sentences on count 3 for engaging in the business of distillers without giving notice to the government.

The defendants urge that the court erred in refusing to "dismiss" counts 2, 4, 5, and 6 of the indictment, in admitting in evidence certain checks, in refusing to charge as requested, and in refusing to direct a verdict for the defendants.

In September, 1934, the Bestivall Poultry Manure Company leased certain premises in Glassboro, N. J., to Frank E. Whitcombe, trading as the Stanley Manufacturing Company, hereinafter called the Stanley Company. Some question was raised about Whitcombe's connection with the conduct of the business there. He, however, signed the lease for the Stanley Company.

The premises consisted of a large factory building located about a quarter of a mile from the highway.

The Stanley Company took possession of the premises immediately after the lease was signed. Under the supervision of Turnia, it repaired the building, which consisted in covering it with tar paper, closing some of the windows and doors, erecting partitions and installing therein machinery, tanks, filters, boilers, and heating units. During this time, the defendant Marlo worked there and Whitcombe visited the plant now and then. The business was conducted in the name of the Stanley Company and Turnia was the manager, hiring and discharging help and contracting and paying for materials with checks signed by Whitcombe.

On suspicion that an illicit whisky plant was being operated there, state and federal officers visited it in March, May, and June, 1935 and talked to Turnia and Marlo, but they did not discover anything to confirm their suspicion. However, on July 1, 1935, state officers of the Department of Alcoholic Beverage Control of New Jersey, suspecting that alcohol was coming from the premises, watched the place. At or about 3 o'clock in the afternoon they saw a large truck enter the driveway leading to the plant. About an hour afterward, the same truck, driven by Giordano, came from the premises. It was stopped by the state officers. There was an odor of alcohol about it. Upon examination, the officers discovered that the body of the truck, which was entirely closed, contained a large tank which was fitted into and formed a part of the body. The tank had three compartments, each of which had an intake and outlet valve which were concealed behind the driver's seat. One of the compartments contained alcohol fit for bev-

erage purposes and was similar to the alcohol later discovered in the building.

Giordano presented to the officers a fictitious waybill. While he was being questioned by the officers, Turnia came from the building and expressed indignation at being constantly annoyed by officers.

The state officers seized the truck and shortly thereafter entered the building over the objection of Marlo. Upon investigation the officers found four large tanks, ten absorption filters, a number of cans and drums, a quantity of alcohol, some denatured alcohol and materials commonly used in recovering alcohol from denatured alcohol.

The state officers remained in the premises until about 8 o'clock in the evening when federal officers came, and from then on the custody of the premises remained in the possession of both the state and federal officers.

A search of the building went on for three days and on the third day, July 3, 1935, the faint noise of a motor was heard. Upon investigation the officers found concealed behind the partitions in a laboratory in a specially constructed compartment "a large still." "The only entrance to the compartment was a small sliding door whch was carefully concealed behind the shelving.".

The defendants were indicted, tried, and convicted. The case is here on appeal from the judgments entered on the verdict of guilty by the jury.

The defendants say that the court erred in refusing to "dismiss" count 2 of the indictment on the ground that it fails to charge an offense against the United States for the reason that they are charged with having a still in their possession without registering it with the District Supervisor of the Alcohol Tax Unit in the Bureau of Internal Revenue for the Fourth District of the United States, etc., as required by law, whereas the evidence shows that they did not have a "still" in their possession but a "rectifying column" which is not required to be registered.

Whatever this device or apparatus was, called by the government a "still" and by the defendants a "rectifying column," its purpose and function "was intended and designed" by the "defendants for the unlawful production," whether by distillation or rectification, "of distilled spirits for beverage and commercial purposes."

To establish that the device was a rectifying column and not a still, the defendants refer to the testimony of Thomas J. Sullivan on page 327 of the record. He testified as follows:

"Q. And what was in the column, or what did the column constitute or make up? A. The column, which was built of copper, was 34½ inches in diameter. It was in nine sections, each of which were 3 feet high and the sections being flanged and bolted together and carried up in a vertical plane in a corner of the building, each one of the nine sections had 5 plates, there being a total of 45 plates in the column.

"Q. What would be the effect of these? A. The function or the effect of the plates in a rectifying column such as this is to selectively distil the vapor which rises through the column. Each one of the 45 plates being the equivalent of a small still."

This testimony, if believed by the jury, as it evidently was, establishes two things: That this apparatus, set up there, constituted a rectifying column and that each of these forty-five plates constituted a small still, or its equivalent, which would satisfy the technical interpretation of count II of the indictment.

Section 3258 of the Revised Statutes (26 U.S.C.A. § 1162) covers a "still or distilling apparatus" and we are inclined to think, as the government contends, that this particular device with all of the apparatus there set up, with the intention to produce distilled spirits fit for beverage purposes, may well constitute a "still or distilling apparatus" within the meaning of the statute as charged in the indictment.

The government charged in this second count of the indictment that the defendants had in their possession and custody for the unlawful production of distilled spirits for "beverage and commercial purposes," a still which was not registered as required by law.

The defendants contend that this count is duplicitous for the reason that section 3258, R.S. (26 U.S.C.A. § 1162), does not relate to the possession of a still for commercial purposes, but only for beverage purposes and that the failure to register a still used for the production of "commercial" alcohol is not a crime under that section.

Count II of the indictment was intended to charge the defendants with the violation of the provisions of section 3258, R.S.. in that they had in their possession a still without registering it as required by law and without setting forth in writing among other things the purpose for which it had been or was intended to be used and charged that it was intended to be used for the unlawful production of distilled spirits for "beverage and commercial purposes." We do not think that the statement that the still which they had set up was to be used for "beverage" and commercial purposes renders the indictment bad for duplicity. The statement of the purpose for which the still was to be used cannot vitiate the count which had already properly charged the crime.

Further, this point was not raised at or prior to the trial. It is raised here for the first time and it would be unfair to the trial judge to consider it here.

The defendants further urge that count II is bad for the reason that they were charged with failure to register the still with the District Supervisor of the Alcohol Tax Unit in the Bureau of Internal Revenue, instead of with the Collector of Internal Revenue for the district as the statute requires.

This section was repealed by the National Prohibition Act (41 Stat. 305), but was re-enacted by the Willis-Campbell Act, § 5 (27 U.S.C.A. § 3) and the duties imposed upon the collector in section 3258 of the Revised Statutes (26 U.S.C.A. § 1162) were conferred upon the District Supervisor by the Prohibition Reorganization Act of 1930, § 3, 46 Stat. 428 (27 U.S.C.A. § 103) and the regulations promulgated thereunder. The contentions of the defendants here made are fully and adversely answered by the Circuit Courts of Appeals for the Second, Fourth, Ninth, and Tenth Circuits in the cases of United States v. Dibella, 28 F.(2d) 805; United States v. Lecato, 29 F.(2d) 694; Silva v. United States, 35 F.(2d) 598; Connley et al. v. United States, 46 F.(2d) 53; Scott v. United States, 78 F.(2d) 791; Benton v. United States, 80 F.(2d) 162.

The defendants contended below and argued here that the District Court erred in not suppressing the evidence obtained as the result of the search and seizure by the federal officers on July 1, 1935, and subsequently, and in admitting in evidence the facts obtained in the search.

The rule is well settled that if a search and seizure, without warrant, are made upon probable cause, and the facts and circumstances justify a reasonably prudent person in believing that an offense has been committed or is being committed in or upon the premises searched, they are not prohibited by the Fourth Amendment to the Constitution of the United States. Stacey v. Emery, 97 U.S. 642, 24 L.Ed. 1035; Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A.1915B, 834, Ann.Cas.1915C, 1177; Carroll v. United States, 267 U.S. 132, 45 S. Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790; Mabee v. United States (C.C.A.) 60 F.(2d) 209; Pong Ying v. United States (C.C.A.) 66 F.(2d) 67; Mello v. United States (C. C.A.) 66 F.(2d) 135; Rocchia v. United States (C.C.A.) 78 F.(2d) 966. The facts in the possession of the officers not only justified, but really compelled, the belief that a crime had been, or was being, committed in and about the premises searched.

The checks about whose admission in evidence the defendants complain were seized as an incident of the arrest of the defendants and were so closely related to the conduct of the business as to justify the conclusion that they were used to carry it on. Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231.

But, unless the defendants claim the ownership of the property seized and admitted in evidence, they have no constitutional rights to object to its production in evidence and have no standing in order to avail themselves of the rights protected by the Fourth Amendment. Mello v. United States, supra; United States v. Messina et al. (C.C.A.) 36 F.(2d) 699; Chepo v. United States (C.C.A.) 46 F.(2d) 70; Wida v. United States (C.C.A.) 52 F.(2d) 424; United States v. Crushiata et al. (C.C.A.) 59 F.(2d) 1007; Kelley v. United States (C.C.A.) 61 F.(2d) 843, 86 A.L.R. 238.

In this case neither Turnia, Giordano, nor Marlo claim the property searched, and Whitcombe, in whose name the property was leased, did not come forward at the trial and claim the property as his. Consequently, they are not in a position to complain.

The defendants contend that the trial court erred in refusing to "dismiss" counts II ·and V of the indictment on the ground that the proofs fail to support the charges therein. Of course, if there was no still or distilling apparatus on the premises, the point would be well taken, but what we have said about the forty-five plates disposes of this contention.

The defendants say that the court erred in refusing to charge as requested in respect to counts II and V as follows:

"11. Distilled spirits within the meaning of the statute applicable to this case, is a liquid which is produced by the fermentation of grain, starch, molasses or sugar.

"12. The recovery of ethyl alcohol from denatured alcohol is not the production of distilled spirits as defined by the statute.

"13. I, therefore, charge you that unless you find from the evidence that the defendants, or any of them, were producing distilled spirits or were brewing or making mash, wort, or wash for distillation, or for the production of spirits, or were by any process of evaporization, separating alcoholic spirit from a fermented substance, the defendants, or any of them, were not engaged in the business of distillers, as defined by the statute, and if you so find, you must return a verdict of not guilty under counts 3 and 5 of this indictment."

■ This refusal did not constitute error, for the court had substantially charged the same thing in the general charge and the same may be said about its refusal to charge requests 11, 12, and 13 as to count VI. Bennett v. United States, 227 U.S. 333, 33 S.Ct. 288, 57 L.Ed. 531; United States v. Trenton Potteries Co., 273 U.S. 392, 47 S.Ct. 377, 71 ·L.Ed. 700, 50 A.L. R. 989; Rosenthal v. United States (C.C. A.) 18 F.(2d) 24; Connley v. United States, supra.

■ The court did not err in refusing to quash count VI and direct a verdict thereon upon the ground that the evidence did not sustain the charge. There was evidence that there was found on the premises alcohol which had been completely denatured according to the formula C. D. 5. There was also found alcohol fit for beverage purposes.

The defendants finally contend that the learned trial judge erred in entering judgment on count I, which charges a conspiracy to violate the internal revenue laws as alleged in counts from II to VI of the indictment.

This might be true if their contentions as to those counts were sound, but we have held them to be unsound and have sustained the contentions of the government. Consequently the court did not err in entering judgment on the verdict of the jury finding the defendants guilty of the conspiracy charged.

The judgments of the District Court are affirmed.